UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KHALEEF DANIELS,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant*. | No. 23-cv-04572 (MEF)(CLW)<br><br>**OPINION and ORDER** |

**TABLE OF CONTENTS**

I. **Background**
    A.  **The Allegations**
    B.  **The Lawsuit**
    C.  **The Motion**
    D.  **Legal Principles**
    E.  **The Parties' Arguments**
II. **Discretionary Function Exception**
    A.  **Shower Seat**
        1.  **Judgment**
        2.  **"Designed to Shield"**
    B.  **Bed**
        1.  **Judgment**
        2.  **"Designed to Shield"**
III. **Conclusion**

\* \* \*

A prisoner was injured when he fell, and sued the United States.

The United States has now moved to dismiss, arguing there is no jurisdiction.

The motion is granted.

                    \*     \*     \*

**I.   Background**

    **A.   The Allegations**

The relevant allegations for now are as follows.[1]

While imprisoned in a federal facility, a handicapped prisoner[2] was taking a seated shower; the seat detached. See Amended Complaint ("Complaint") ¶¶ 5-9, 30-31 (ECF 9). He fell and was injured. See id. ¶¶ 31-33.

Later, the same prisoner fell while moving from his bunk to his wheelchair. See id. ¶¶ 10-12, 15-21. He was again injured. See id. ¶¶ 21-23.

    **B.   The Lawsuit**

In light of the above, the prisoner sued. He is referred to from here as "the Plaintiff." The suit named the United States as the defendant.

The Complaint is in two counts --- one for the shower seat incident, and one for the bed incident. Each count raises a claim under the Federal Tort Claims Act. See id. ¶¶ A, B.

    **C.   The Motion**

The United States now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1).

The argument: there is no jurisdiction here because the United States retains its sovereign immunity; the Federal Tort Claims Act's immunity-waiver is not in play, the argument goes, because the United States is sued here based on how its agents undertook "a discretionary function." See Memorandum of Law in Support of

---

[1] Because this is a motion to dismiss, the Court must treat the allegations as true. See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009). Whether they are in fact true --- that question would become relevant only later in the case.

[2] Khaleef Daniels.

2

Defendant's Motion to Dismiss the Complaint (ECF 21-3) ("Memorandum") at 5-16.

The motion is before the Court.

### D. **Legal Principles**

Before getting to the parties' arguments on the motion, see Part I.E, walk briefly through the governing legal principles.

"[T]he United States, as sovereign, is immune from suit." Lehman v. Nakshian, 453 U.S. 156, 160 (1981) (cleaned up).

But the United States can opt to give up its immunity. And when it does, it can be sued. See Maine Cmty. Health Options v. United States, 590 U.S. 296, 322 (2020); United States v. Bormes, 568 U.S. 6, 9-10 (2012).

The United States gave up some of its immunity in the 1946 Federal Tort Claims Act. See Brownback v. King, 592 U.S. 209, 212 (2021).

But only some.

The 1946 immunity waiver does not reach claims that are "based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government[.]" 28 U.S.C. § 2680(a).

Does the "discretionary function" exception apply in a given case?

That it is for the United States to prove. See S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 333 (3d Cir. 2012) (citing Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008)).

And it can do so only by establishing that each of two boxes are checked. See United States v. Gaubert, 499 U.S. 315, 322-23 (1991); Xi v. Haugen, 68 F.4th 824, 838 (3d Cir. 2023).

First, that the act that gave rise to an alleged injury was discretionary --- that it "involve[d] an element of judgment or choice." Gaubert, 499 U.S. at 322; Xi, 68 F.4th at 838; Merando, 517 F.3d at 164.

And second: that the "judgment" in question is "of the kind that the discretionary function exception was designed to shield."

3

Gaubert, 499 U.S. at 323-25; Clark v. Sec'y of U.S. Navy, 102 F.4th 658, 661 (3d Cir. 2024).

Against this backdrop, look now to the parties' arguments.

### E. The Parties' Arguments

The Plaintiff is pro se, and has not responded to the United States' motion to dismiss.

But the thrust of his argument is not hard to see: his claims are not barred by sovereign immunity because the claims fit under the immunity waiver laid out in the Federal Tort Claim Act.

\* \* \*

The United States' core argument is that the Federal Tort Claims Act immunity-waiver does not apply here --- because federal officials were undertaking a "discretionary function." See Part I.C.

This argument is a "factual" one --- it does not rest just on the Complaint, but on other materials. See Memorandum at 10-12; Letter at 1 (ECF 23). This is allowed. See, e.g., Const. Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014); CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008); United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007).[3]

\* \* \*

All of this tees up the key question here: does the discretionary function apply?

---

[3] The pro se Plaintiff did not oppose the United States' motion to dismiss. But the Court was concerned that the Plaintiff may not have understood that the United States' opposition rested on outside-of-the-pleadings materials. So on May 14, 2025, the Court issued an Order that (a) made it clear that extrinsic materials are in play and (b) gave the Plaintiff until June 4 to supplement the record, should he wish to. See ECF 33. The Plaintiff did not do so. But on June 9, he asked for more time. See ECF 34. He was granted an extension until July 6. See ECF 35. That deadline has now passed. There has been no filing.

If yes, this Court does not have jurisdiction. If no, the Court has jurisdiction.

Take up the referenced question just below, as to each course of conduct alleged by the Plaintiff here.

## II. Discretionary Function Exception

### A. Shower Seat

#### 1. Judgment

The first alleged course of conduct: in December of 2021, prison employees "failed to properly install, maintain or inspect [a] . . . handicap shower seat," in the Special Housing Unit. See Complaint ¶ 35. The Plaintiff was allegedly injured when the seat detached during his use of it. See id. ¶¶ 30–33.

To determine if this counts as "discretionary," the Court must first "decide whether a statute, regulation, or policy required" the employees to act "in any specific manner, or whether the . . . actions were discretionary because they involved an 'element of judgment or choice.'" Merando, 517 F.3d at 168 (quoting Gaubert, 499 U.S. at 322); see also DiBease v. United States, 2024 WL 4234640, at *3 (3d Cir. Sept. 19, 2024) (explaining that the exception does not apply if a statute, regulation, or policy "specifically prescribes a course of action," in which "the employee has no rightful option but to adhere") (quoting Gaubert, 499 U.S. at 322).

Congress tasked the Bureau of Prisons to "provide suitable quarters and provide for the safekeeping [and] care" of federal prisoners. 18 U.S.C. § 4042(a)(2) (cleaned up).

But Section 4042 does not lay out a particular course of action, and "leaves the implementation of these duties to the discretion of [prison] officials." Brooks v. Bledsoe, 682 F. App'x 164, 167 (3d Cir. 2017).

Look now to the regulations that govern the Special Housing Unit, where the shower fall allegedly took place. See Complaint ¶¶ 30–31. These state that prisoners shall "ordinarily have an opportunity to shower . . . at least three times per week." 28 C.F.R. § 541.31(f).

5

But they do not mandate a given approach as to the installation, maintenance, or inspection of shower seats.  See generally 28 C.F.R. § 541.31.

And more of the same from the prison's operations manual.  It directs facility managers to "develop a maintenance, inspection, and testing program," that complies "with all applicable Bureau policies, National Fire Protection Association . . . standards, manufacturer recommendations, industry standards, and applicable Federal, state, or local codes and regulations."  Bureau of Prisons Program Statement 4200.12, Facilities Operations Manual Ch. 5 § 1, https://www.bop.gov/policy/progstat/4200.12cn-1.pdf (accessed June 7, 2025).

But it does not mandate a particular course of action as to shower seats.

According to the prison's facility manager, "[t]here is no statute, regulation, or mandatory policy that mandates specifically how to install, maintain, or inspect the shower seats," at the prison.  See Linton Declaration ¶ 12 (ECF 21-6).

And that seems right.  The Plaintiff has not identified, and the Court has not found, any statute, regulation, or policy that mandates a particular approach concerning shower seats.  See Complaint ¶¶ 28-35.

And other courts have landed on roughly the same conclusion.  See Dugan v. Warden, FCC Coleman-USP I, 673 F. App'x 940, 943 (11th Cir. 2016) ("[T]he [prison] maintains discretion to decide the manner . . . with which . . . showers will be made available: details [of] which are not specified by statute or regulation."); Williams v. United States, 2025 WL 509167, at *3-4 (S.D. Ind. Feb. 14, 2025) (installation, availability, and maintenance of handicap shower features were discretionary functions); Lopez v. United States, 2020 WL 1492804, at *4 (M.D. Fla. Mar. 27, 2020) (the prison "retains considerable discretion to determine the means by which it will" provide inmates "with an opportunity to shower regularly"; case concerned the installation and use of shower heads); Fishman v. United States, 2017 WL 11650504, at *9 (C.D. Cal. Feb. 7, 2017) (installation and access to wash basins and toilets in the Special Housing Unit was a discretionary function); Owens v. Sherrod, 2012 WL 5208637, at *2-3 (W.D. La. Sept. 10, 2012) (installation of shower stall features was a discretionary function).

6

Bottom line: federal officials' decisions here as to the shower seat were not pre-determined or meaningfully channeled in some authoritative way, by a statute, regulation, or internal agency guideline. Officials' shower stall decisions therefore "involve[d] an element of judgment or choice." Gaubert, 499 U.S. at 322.

This means that as to the discretionary function inquiry, the first of the two relevant steps is satisfied.

### 2. "Designed to Shield"

Next, the Court must decide whether the shower stall judgment "is of the kind that the discretionary function exception was designed to shield," meaning it is "susceptible to policy analysis." Id. at 322–23, 325 (cleaned up); Clark, 102 F.4th at 661; Abunabba, 676 F.3d at 336 ("[T]here must be a rational nexus between the Government's decision and social, economic, and political concerns.") (cleaned up).

"The focus of the inquiry is not on the [United States'] agent's subjective intent in exercising the discretion . . . but on the nature of the actions taken." Abunabba, 676 F.3d at 333 (cleaned up); see also Baer v. United States, 722 F.3d 168, 175 (3d Cir. 2013).

If the "statute, regulation, or agency guidelines, allows . . . [an] agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Abunabba, 676 F.3d at 336 (quoting Gaubert, 499 U.S. at 324) (emphasis added); see also Baer, 722 F.3d at 172–73.

The referenced "presum[ption]" is rebuttable, and the burden of rebutting is on a plaintiff. See Abunabba, 676 F.3d at 336; see also Croyle by & through Croyle v. United States, 908 F.3d 377, 381 (8th Cir. 2018) ("The plaintiff bears the burden of rebutting this presumption."); Bolduc v. United States, 402 F.3d 50, 62 (1st Cir. 2005) ("It is the plaintiff's burden to rebut this presumption and demonstrate that [the] discretionary conduct is not susceptible to policy-related judgments.").

But here, the Plaintiff makes no effort to rebut the presumption. There is nothing along those lines in his Complaint. See Complaint ¶¶ 28-35. And he has not responded to the United States' filing. See footnote 3.

7

In any event, making decisions about shower seats plainly involves a range of questions (Which shower seats to buy?  Where to install them?  How often to inspect them?  Should inspections be done by third parties?  How often to replace them?) that touch on "policy" issues --- including the use of limited funds and staff time on one inmate safety and health priority (shower seats) versus other, competing safety and health priorities.  See, e.g., Williams, 2025 WL 509167, at *4  (installation, availability, and maintenance of handicap shower features involved "balancing . . . a variety of policy interests"); Lopez, 2020 WL 1492804, at *5 (installation and control of shower fixtures grounded in "public policy reasons, such as . . . conservation of limited resources[,] . . . health and safety"); cf. Coleman v. United States, 2021 WL 2155097, at *5 (D.N.J. May 27, 2021) (inspection and maintenance of air vents involved weighing considerations of "limited staff" and the "safekeeping, care, and subsistence" of inmates); Fishman, 2017 WL 11650504, at *10 (installation and maintenance of wash basins and toilets involved balancing needs of inmates and institutional security); Owens, 2012 WL 5208637, at *2-3 (shower mat installation involved security and economic concerns).

In short, the second part of the two-part "discretionary function" test is satisfied here as to the shower seat allegations.

Therefore, there has been no sovereign immunity waiver, and the Court does not have jurisdiction over the shower seat claim.

    **B.**    **Bed**

        **1.**    **Judgment**

The Plaintiff's second claim: in April of 2022, prison employees assigned him to a cell in the Special Housing Unit, and he fell while moving from his bunk to his wheelchair.  See Complaint ¶¶ 11-13, 16-17, 19, 20-23.

But as to this claim, this Court is bound by closely on-point Third Circuit precedent.  The Court of Appeals has held that there is no "federal statute, regulation or policy . . . [that] specifically prescribe[s] a course of action for [cell] assignments."  Rinaldi v. United States, 904 F.3d 257, 273 (3d

Cir. 2018) (cleaned up) (quoting Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000)).[4]

And the Third Circuit has also made clear that the first part of the discretionary function test is generally satisfied even where officials house an inmate in a place that exposes him to a heightened and foreseeable risk of injury. See Rinaldi, 904 F.3d at 262–63, 273–74 (exception applied to housing the plaintiff with a known dangerous inmate, who expressly warned staff that if the plaintiff were placed in the same cell, "he would kill him," resulting in several attacks).

This holding binds this Court.

And it is in keeping with the overwhelming weight of federal law. See, e.g., Bulger v. Hurwitz, 62 F.4th 127, 133-34, 143-44 (4th Cir. 2023) (discretionary function exception applied to housing a prisoner, who was a known informant and who had

---

[4] The various other courts of appeals that have addressed the issue have come to all but the same conclusion. See Bulger v. Hurwitz, 62 F.4th 127, 143-44 (4th Cir. 2023); Enlow v. United States, 161 F. App'x 837, 840-41 (11th Cir. 2006); Montez ex rel. Estate of Hearlson v. United States, 359 F.3d 392, 396-97 (6th Cir. 2004); Cohen v. United States, 151 F.3d 1338, 1341-44 (11th Cir. 1998); Dykstra v. U.S. Bureau of Prisons, 140 F.3d 791, 795-96 (8th Cir. 1998). How federal officials decide "housing . . . assignments," it has been said, "unquestionably involve[s] an element of judgment or choice." Rinaldi, 904 F.3d at 273; McAteer v. United States, 2024 WL 3967488, at *4 (E.D. Pa. Aug. 28, 2024) ("BOP housing . . . assignments are discretionary."); Baez-Garcia v. United States, 2023 WL 11999012, at *19 (M.D. Pa. Mar. 2, 2023); Drake v. United States, 2021 WL 4502240, at *5 (M.D. Pa. Sept. 30, 2021); Shorter v. United States, 2020 WL 4188455, at *10-11 (D.N.J. July 21, 2020); see also Hernandez v. United States, 2018 WL 3795300, at *4-5 (W.D. Tex. Aug. 9, 2018) (decision to house inmate in an area that did not have handicap accessible fixtures "is an inherently discretionary one"); Pearson v. Stock, 2017 WL 2312824, at *15 (S.D. W. Va. Apr. 10, 2017) (failure "to assign . . . a handicap accessible cell," was discretionary); Harper v. United States, 2009 WL 3190377, at *1, 4-5 (E.D. Ky. Sept. 30, 2009) (decision to assign a handicapped inmate to a particular cell was discretionary); Davis v. United States, 2006 WL 4774616, at *2-3 (E.D.N.C. Aug. 31, 2006), aff'd, 225 F. App'x 130 (4th Cir. 2007) (assigning inmate to a non-handicap cell was discretionary).

committed sex-related crimes against a child, to general population, which resulted in an attack and his death less than 14 hours after his arrival); Rich v. United States, 811 F.3d 140, 142, 145-46 (4th Cir. 2015) (applying exception to the placement of prisoner in a recreation area with members of a gang, despite his file indicating that he had been continuously targeted by members of that gang at different facilities, resulting in an attack); Ashford v. United States, 463 F. App'x 387, 389-90, 394-95 (5th Cir. 2012) (applying exception where officials were advised of a high risk that prisoner would be attacked by a specific inmate if they were housed in the same facility, but nevertheless housed them in the same facility, which resulted in an attack); Patel v. United States, 398 F. App'x 22, 25, 28-29 (5th Cir. 2010) (applying exception where officials repeatedly transferred inmate to facilities without the medical equipment to care for prisoner's herniated disc and ruptured bicep tendon, despite knowledge of those issues, which caused them to worsen); Enlow v. United States, 161 F. App'x 837, 838-41 (11th Cir. 2006) (applying exception to transferring an informant, who was recently attacked, to general population, despite the prison's assessment that he was at risk as an informant and its recommendation that he be transferred to a more secure facility, which resulted in another attack); ); Montez ex rel. Estate of Hearlson v. United States, 359 F.3d 392, 394, 396-97 (6th Cir. 2004) (applying exception where officials were aware of the plaintiff's prior altercations with other inmates but assigned him to a housing unit for inmates with mental health problems, resulting in an attack that killed the plaintiff); Drake v. United States, 2021 WL 4502240, at *1-2, 5 (M.D. Pa. Sept. 30, 2021) (applied exception to refusal to change prisoner's housing assignment despite known danger involving racial tensions, resulting in a racially motivated attack); Hernandez v. United States, 2018 WL 3795300, at *1, 4-5 (W.D. Tex. Aug. 9, 2018) (applying exception where officials were aware of prisoner's recent back surgery and recovery issues, but assigned him to a section of the prison without handicap accessible shower facilities, which resulted in an injury while he took a shower); Pearson v. Stock, 2017 WL 2312824, at *1-2, 15 (S.D. W. Va. Apr. 10, 2017) (applying exception where officials were aware of prisoner's ankle surgery and cast but assigned him to a small cell that was difficult to navigate, rather than an accessible cell, which resulted in a fall); Harper v. United States, 2009 WL 3190377, at *2, 4-5 (E.D. Ky. Sept. 30, 2009) (applying exception where staff

assigned a disabled prisoner to a lower bunk next to a steam radiator, despite foreseeable risk of burning his paralyzed legs, which occurred on several occasions); see also Shorter v. United States, 2020 WL 4188455, at *1-2, 10-11 (D.N.J. July 21, 2020); Ballester v. United States, 2006 WL 3544813, at *1–3 (N.D. Ga. Dec. 8, 2006).

In short, the law compels the conclusion that the Plaintiff's cell assignment involved an element of judgment, and the first step of the discretionary function inquiry is therefore satisfied.

### 2. "Designed to Shield"

As to the next step in the analysis, the Third Circuit's holding in Rinaldi also controls this Court's decision.

In Rinaldi, the Third Circuit held that the discretionary function exception was designed to shield prison housing assignments because they involve policy judgments regarding institutional order, discipline, and security. See Rinaldi, 904 F.3d at 273–74.

Other courts of appeals have reached similar conclusions. See Ashford, 463 F. App'x at 395 (housing assignments involve "policy-based decision[s]" about "[m]aintaining order and security"); Santana-Rosa v. United States, 335 F.3d 39, 43-44 (1st Cir. 2003) (housing assignments require "decision-making within the context of various difficult policy choices," and must fall "within the discretionary function exception . . . if penal institutions are to have the flexibility to operate"); Cohen v. United States, 151 F.3d 1338, 1344 (11th Cir. 1998) (housing assignments are part of an "inherently policy-laden endeavor of maintaining order and preserving security within our . . . prisons"); Dykstra v. U.S. Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998) (decision not to house plaintiff in protective custody "based upon security levels, available resources, classification of inmates, and other factors . . . which . . . are inherently grounded in social, political, and economic policy").

And these considerations have been held to also apply to decisions to house inmates in special housing units, as the Plaintiff here was. See e.g., Enlow, 161 F. App'x at 841; Watts v. United States, 2024 WL 3993278, at *5-7 (W.D. Pa. Aug. 29, 2024); White v. United States, 2024 WL 2113671, at *7 (D. Md.

11

May 10, 2024); Susinka v. Trujillo, 2022 WL 17770641, at *7 (D. Colo. Dec. 19, 2022); Shorter, 2020 WL 4188455, at *11; Simpson v. United States, 2019 WL 1125832, at *3 (N.D. Ill. Mar. 12, 2019); Smith v. United States, 2016 WL 552689, at *7 (S.D. W. Va. Jan. 19, 2016); Carpenter v. Bragg, 2015 WL 13734632, at *10-11 (D.S.C. Nov. 30, 2015); Barone v. United States, 2014 WL 4467780, at *12 (S.D.N.Y. Sept. 10, 2014); Young v. United States, 2014 WL 1153911, at *11 n.5 (E.D.N.Y. Mar. 20, 2014).

Moreover, as noted above in Part II.A.2, if the "statute, regulation, or agency guidelines, allows . . . [an] agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Abunabba, 676 F.3d at 336 (quoting Gaubert, 499 U.S. at 324); see also Baer, 722 F.3d at 172-73.

And there is no effort here from the Plaintiff to rebut the presumption.[5]

Bottom line: the Third Circuit's Rinaldi decision is controlling; it compels the conclusion that the discretionary function test is satisfied here. Cell assignments involve policy considerations. The Court must "presume" that the Plaintiff's particular assignment was "grounded in policy," see Abunabba, 676 F.3d at 336, and the Plaintiff offers nothing to rebut that conclusion. See Complaint ¶¶ 5-27.

In light of the above, the Plaintiff's cell assignment satisfies both steps of the inquiry, and the discretionary function exception applies to the relevant decision.

---

[5] A federal official states that cell "assignments involve considerations of inmate and staff safety, prison security (like escape risk), resource allocation (staffing levels), availability of cells, and individual inmate particulars, including inmate medical needs and compatibility with potential cellmates." Blagojevich Declaration ¶ 5 (ECF 21-4). Per the federal official, at the time the Plaintiff was housed in the Special Housing Unit, there were seven cells there in total, with one handicap accessible cell, which was already occupied. See id. ¶¶ 6-7. When it became available, after approximately ten days, the Plaintiff was relocated to that accessible cell. See id. ¶ 7.

### III. Conclusion

As to each of the Plaintiff's claims, the United States has carried its burden of establishing that the conduct of its employees falls under the discretionary function exception to the Federal Tort Claims Act. The Act's immunity waiver is therefore inapplicable, the United States retains sovereign immunity, and the Plaintiff's claims must be dismissed for lack of subject matter jurisdiction. This dismissal is without prejudice.

IT IS on this 7th day of July, 2025, **SO ORDERED.**

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Michael E. Farbiarz, U.S.D.J.